## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ANIBAL MEJIAS, DENNIS MINTER, JERRY FULLER, and JOSE PENA, on behalf of themselves and those similarly situated,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**GOYA FOODS, INC.,**<br><br>**Defendant.** | **Civil Action No. 3:20-cv-12365-BRM-TJB** |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Anibal Mejias, Dennis Minter, Jerry Fuller, and Jose Pena (collectively, "Plaintiffs"), on behalf of themselves and those similarly situated, through their undersigned counsel, file this Second Amended Class Action Complaint ("SAC" or "Complaint") against Defendant Goya Foods, Inc. ("Defendant" or "Goya"). This Complaint is being filed with leave of the Court pursuant to Fed. R. Civ. P. 15(a)(2), and it relates back to the date of the original pleading pursuant to Fed. R. Civ. P. 15(c).

## INTRODUCTION

1.     Plaintiffs bring this class action with Plaintiffs Dennis Minter, Jerry Fuller, and Jose Pena as the class representatives to redress Defendant's violations of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL"), and

1

the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq.* ("NJWHL"). Plaintiff Mejias asserts his claims on an individual basis and also asserts individual claims, in the alternative, for violations of the South Carolina Payment of Wages Act, S.C. Code. § 41-10-10, *et seq.* ("SCPWA").

2.      Goya unlawfully designated Plaintiffs and those similarly situated as independent contractors and used that improper classification to unlawfully withhold compensation from them. Specifically, Goya unlawfully withheld wages from Plaintiffs and those similarly situated by failing to pay overtime compensation for hours worked in excess of forty (40) per week, and by deducting money for truck and equipment rental, truck repairs and maintenance, permits and licenses, fuel, mileage taxes, fees, tolls, insurance, health insurance, returned or damaged products, and other deductions imposed by Goya that are not permitted under New Jersey law.

3.      As a result of Goya's unlawful actions, Plaintiffs and those similarly situated are owed compensation, wages, and other damages and penalties.

## **PARTIES**

4.      Plaintiff Anibal Mejias is an adult individual residing at 590 Township Line Road, Franklinville, New Jersey 08322. Mr. Mejias was an employee of Goya working as a truck driver in South Carolina from approximately May 2018 to May

2

2019. Mr. Mejias signed a form agreement with Goya labeled Independent Contractor's Service Agreement dated May 2018 (the "Agreement").

5.    Plaintiff Dennis Minter is an adult individual residing at 139 Smith Street, Elizabeth, New Jersey 07201. Mr. Minter was an employee of Goya working as a truck driver in New Jersey from approximately October 2014 to May 2019, and he signed the form Agreement with Goya dated February 1, 2018.

6.    Plaintiff Jerry Fuller is an adult individual residing at 123 Colonial Square Drive, Lindenwold, New Jersey 08021. Mr. Fuller was an employee of Goya working as a truck driver in New Jersey, Pennsylvania, Maryland, and Delaware from approximately June 2010 to June 2017.

7.    Plaintiff Jose Pena is an adult individual residing at 12 Linda Lane, Egg Harbor Township, New Jersey 08234. Mr. Pena was an employee of Goya working as a truck driver in New Jersey, Maryland, and Delaware from approximately July 2017 to June 2019.

8.    Goya told Plaintiffs that it utilized the Agreement as a standard independent contractor agreement for truck drivers and maintained the common policies and practices at issue in this action. The Agreement is used by Goya to falsely misclassify employees as independent contractors when in fact they are not independent contractors under New Jersey law and other applicable state law.

3

9.     The Agreement purports to cover the terms and conditions of Plaintiffs' employment and, upon information and belief, is the same in all material respects set forth in this Complaint with respect to the agreements executed by the other misclassified truck drivers in the proposed Class as defined below.

10.     Defendant Goya Foods, Inc. is a company doing business in New Jersey and throughout the United States manufacturing and selling and delivering food products under the Goya brand name. Goya's principal place of business is located at 350 County Road, Jersey City, New Jersey.

## JURISDICTION AND VENUE

11.     The Superior Court of New Jersey has jurisdiction over this matter as the Agreement has a choice of law and choice of venue provision designating New Jersey law as the governing law and New Jersey as the venue for any litigation between the parties. The Agreement states in Section 12:

> (e) New Jersey Law and Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey both as to interpretation and performance, without regard to New Jersey's conflict-of-law rules, and any dispute arising under this Agreement or relating to the relationship created by this Agreement shall be subject to the exclusive jurisdiction of the federal or state courts of New Jersey.

12.     The Superior Court has personal jurisdiction over Goya as Goya conducts substantial business in New Jersey and has its headquarters in New Jersey.

13.     Venue is proper in Mercer County under R. 4:3-2(b) as Goya conducts substantial business throughout Mercer County and Goya's registered agent is located in Mercer County.

## CLASS ACTION ALLEGATIONS

14.     Plaintiffs Dennis Minter, Jerry Fuller, and Jose Pena bring their claims for relief in Count I below individually and on behalf of:

> All truck drivers who performed work for Goya in the State of New Jersey and who were designated as independent contractors or owner operators and from whom Goya withheld wages by deducting money associated with truck and equipment rental, truck repairs and maintenance, permits and licenses, fuel, mileage taxes, fees, tolls, insurance, health insurance, returned or damaged products, and/or other deductions set forth in Goya's records, between July 18, 2013 and the present (the "New Jersey Wage Deduction Class").

15.     Plaintiffs Dennis Minter, Jerry Fuller, and Jose Pena also bring their claims for relief in Count II below individually and on behalf of:

> All truck drivers who performed work for Goya in the State of New Jersey and who were designated as independent contractors or owner operators, and who were not paid overtime compensation when they worked over forty (40) hours in a workweek, at any time between July 18, 2017 and the present (the "New Jersey Overtime Class").

16.     The New Jersey Wage Deduction Class and the New Jersey Overtime Class are together referred to as the "Classes." Plaintiffs reserve the right to modify, supplement, and redefine the Classes following discovery as necessary.

17.    There are over 40 members of each of the Classes. As such joinder of all members of the Classes is impracticable and the Classes meet all applicable numerosity requirements.

18.    There are common questions of law and fact that affect the rights of every member of the Classes, and the types of relief sought are common to every Class member. The same conduct by Goya has injured each Class Member. These common questions of law and/or fact include, without limitation:

a.    Whether Goya improperly classified its independent contractor truck drivers;

b.    Whether Goya unlawfully deducted wages from the compensation of the Class members through its misclassification scheme; and

c.    Whether Goya unlawfully withheld overtime compensation from Class members through its misclassification scheme when they worked over 40 hours in a workweek.

19.    These common questions of law and/or fact predominate over any questions affecting only individual Class members.

20.    The claims of Plaintiffs Dennis Minter, Jerry Fuller, and Jose Pena are typical of the claims of all Class members in that all of the claims are based upon the same factual and legal theories. It is the same conduct by Goya that has injured each Class member.

21.    Plaintiffs Dennis Minter, Jerry Fuller, and Jose Pena will fairly and adequately represent and protect the interests of the Class members, because Plaintiffs' interests are coincident with, and not antagonistic to, those of the Classes.

22.    Plaintiffs Dennis Minter, Jerry Fuller, and Jose Pena have retained counsel with substantial experience in the handling of wage and hour class actions, including in the State of New Jersey. Plaintiffs and their counsel are committed to the vigorous prosecution of this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Classes.

23.    Class certification is appropriate because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Goya and/or because adjudications respecting individual members of the Classes would, as a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impending their ability to prosecute their interests.

24.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

25.     Absent a class action, most members of the Classes likely would find the cost of litigating their claims to be prohibitive and would have no effective remedy at law.

26.     The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

27.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the Classes who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

28.     No unusual difficulties are likely to be encountered in the management of this action as a class action.

## **FACTUAL BACKGROUND**

29.     Goya owns and operates approximately fourteen (14) U.S. distribution centers throughout the United States, including at least two (2) distribution centers in New Jersey.

30.    Goya ships its products to different grocery stores throughout the United States, many of them located in New Jersey, for retail sale. In areas where Goya does not have a physical presence, it works with third-party distributors but otherwise it ships directly to retailers.

31.    Goya employs more than 4,000 workers worldwide.

32.    More than 500 Goya salespeople regularly visit stores and take orders and merchandise Goya products for retail sale throughout the United States. When a Goya salesperson visits a store, they place an order on their handheld devices, and these orders are processed overnight for next-day delivery. Sales orders are loaded and delivered to stores on a next-day basis.

33.    Goya delivers straight to its customers' stores, which range from big box retailers to small neighborhood stores. To make its deliveries, Goya uses both traditional w-2 employees as drivers, as well as other drivers that Goya designates as independent contractors, also known as owner operators.

34.    All orders are filled from inventory in Goya's distribution centers and delivered by Goya by truck drivers that Goya hires. The Goya truck drivers, including Plaintiffs, that are misclassified as owner operators/independent contractors, are in reality and under New Jersey law, employees.

35.    Truck driver delivery employees such as Plaintiffs are an integral part of Goya's business model and utilizing some of its driver workforce as independent

contractors has saved Goya tremendous amounts of money and gained for Goya an unfair competitive advantage that is not compliant with New Jersey law.

36.   The truck driver delivery employees at issue are not performing activities that are outside Goya's normal course of business or even outside its normal place of business as goods are produced and shipped directly to customers via an integrated chain of commerce that Goya uses as a competitive advantage. Goods are not distributed to third party sites for delivery but rather flow continuously from Goya to its customers.

37.   Plaintiffs and the Class members are not in business for themselves and instead rely on Goya for their income.

38.   Plaintiffs and the Class members have no control over what prices to charge Goya's customers. All negotiations over the cost of work performed is done directly between Goya and its customers.

39.   Goya provides the training needed for Plaintiffs and the Class members to perform their work.

40.   Goya requires Plaintiffs and the Class members to perform work in accordance with Goya's policies, manuals, and standard operating procedures.

41.   Goya requires that Plaintiffs and the Class members operate under Goya's Department of Transportation ("DOT") number. Plaintiffs and the Class members were not required to obtain individual DOT numbers.

42.    Plaintiffs and the Class members follow similar policies and practices irrespective of their work origin location.

43.    During his employment with Goya, Plaintiff Meijas began and ended each workday at Goya's location in Florence, South Carolina. He made deliveries on routes in South Carolina and North Carolina.

44.    Plaintiff Minter began and ended each workday at Goya's location in Jersey City, New Jersey.

45.    Plaintiff Fuller worked for Goya out of its location in Pedricktown, New Jersey, and made deliveries on routes in New Jersey, Pennsylvania, Delaware, and Maryland.

46.    Plaintiff Pena worked for Goya in Southern New Jersey and made deliveries on routes in New Jersey, Delaware, and Maryland.

47.    Goya's truck drivers, including Plaintiffs, are provided a loaded trailer each night with delivery instructions regarding quantities and locations. The truck drivers exercise no meaningful control over their deliveries.

48.    Plaintiff Mejias routinely left the Goya lot in Florence, South Carolina, in a Goya labeled truck around 3:00 a.m. He routinely worked 12 hours per day, five days per week, and sometimes up to 16 or 17 hours per day.

49.    Plaintiff Minter routinely left the Goya lot in Jersey City, New Jersey, in a Goya labeled truck between 6:00 a.m. and 7:00 a.m., depending on the day, and

he returned to the lot between 6:00 p.m. and 8:00 p.m. each night. He routinely worked five or six days per week.

50.    Plaintiff Fuller typically began his workday for Goya at its warehouse in Pedricktown, New Jersey, between 4:00 a.m. and 5:30 a.m., and returned to the lot after 5:00 p.m. each night. He routinely worked five or six days per week.

51.    Plaintiff Pena typically began his workday for Goya between 3:30 a.m. and 5:30 a.m., and he routinely worked between 12 and 14 hours per day, five or six days per week.

52.    Goya required Plaintiffs and the Class members to return the trucks to the trucking yard each day, and the vehicles were fueled and loaded overnight for next day deliveries, with written instructions regarding what to deliver and where to deliver it.

53.    Plaintiffs and the Class members were not permitted to remove the trucks from the lot overnight or use them for purposes other than driving for Goya.

54.    Goya's truck drivers, including Plaintiffs and the Class members, make many direct customer stops per day, which are exclusively directed by Goya via delivery tickets, and these employees do not deliver to other customers. Goya knows this due to the volume of product and number of stops it assigns to each driver.

55.    Plaintiffs routinely worked in excess of 60 hours per week but were not provided any overtime compensation by Goya, in violation of New Jersey law.

56.     Goya provided Plaintiffs and the Class members with XRS handheld devices to plug into the trucks to track location, hours, and mileage. These devices generate reports required by the Department of Transportation that a true independent contractor would be required to supply independent of the company provided device. Upon information and belief, these same devices were also used for Goya's traditional w-2 truck driving employees.

57.     Plaintiffs and the Class members did not utilize the vehicles for other customers or clients, but only for Goya.

58.     Goya maintained dispatchers who directed and controlled the truck drivers and who regularly communicated with Plaintiffs and the Class members during their workday. Upon information and belief, the same dispatcher dispatched Goya's traditional W-2 truck drivers and the employees misclassified as independent contractors.

59.     Plaintiffs and the Class members were required to get pre-approval for days off via the dispatcher.

60.     Plaintiffs' work is an active, integral, and indispensable part of Goya's business enterprise.

61.     Plaintiffs and the Class members collectively have rendered and continue to render valuable personal services to Goya that (a) confer substantial benefits on Goya; (b) are an integral part of the process that enables Goya to supply

its customers with products; and (c) do not involve the kind of expertise which requires entrustment to an independent professional, as opposed to an employee.

62.    Plaintiffs and the Class members are not free from Goya's control over the method and manner of how the work is performed.

63.    Plaintiffs and the Class members' work is not outside the ordinary course of Goya's business.

64.    Plaintiffs have no bona fide ongoing business entity that could or did survive the termination from Goya.

65.    Goya's attempted designation of drivers as independent contractors is a fiction to hide the true employee status of these workers under New Jersey law. Indeed, Goya directed and controlled all important aspects of Plaintiffs' employment with Goya including their deliveries and their schedule of work. At the same time, however, Goya deducted money normally considered business expenses from the drivers' weekly paychecks purportedly for payment for truck and equipment rental, truck repairs and maintenance, permits and licenses, fuel, mileage taxes, fees, tolls, insurance, health insurance, returned or damaged products, and other deductions imposed by Goya.

66.    While Plaintiffs and Class members are in fact employees under New Jersey law, Goya denied Plaintiffs and the Class members the benefits of

employment such as overtime pay, paid time off, vacation pay, holiday pay and other compensation benefits due to employees.

67.     Goya paid Plaintiffs and the Class members "commissions" based upon a percentage of delivered product assigned and provided to them to deliver each day.

68.     Incentive pay was also given to Plaintiffs and the Class members so long as the total amount of returns from a given day did not exceed a certain percentage of the product that was delivered.

69.     Goya required Plaintiffs and the Class members to pay for normal business expenses and costs that Goya should have been paying under applicable state laws.

70.     The improper deductions are readily calculable and were itemized in each pay period in the drivers' "Driver Commission Report" and the "Driver Commission Statement."

71.     Goya unlawfully made deductions for truck and equipment rental, truck repairs and maintenance, permits and licenses, fuel, mileage taxes, fees, tolls,

insurance, health insurance, returned or damaged products, and other deductions imposed by Goya and memorialized in its records.

**FIRST COUNT**
**Violations of the New Jersey Wage Payment Law**
**Unlawful Deductions**
**(On Behalf of Plaintiffs Minter, Fuller, and Pena, Individually and on Behalf of the New Jersey Wage Deduction Class)**

72.    The foregoing paragraphs are incorporated here as if set forth in their entirety.

73.    Plaintiffs and the New Jersey Wage Deduction Class are employees entitled to the protections of the NJWHL.

74.    Goya is an employer covered by the NJWHL.

75.    Goya is and at all times was responsible for paying wages to Plaintiffs and the New Jersey Wage Deduction Class.

76.    The NJWPL requires that Plaintiffs and the New Jersey Wage Deduction Class receive all wages owed. *See* N.J. Stat § 34:11-4.2.

77.    The NJWPL prohibits employers such as Goya from making deductions or withholdings from the wages of Plaintiffs and the New Jersey Wage Deduction Class except for those deductions or withholdings permitted therein. *See* N.J. Stat. § 34:11-4.4.

78.    Goya violated the NJWPL by withholding wages for illegal deductions from Plaintiffs' and the New Jersey Wage Deduction Class, including, without

limitation, deductions for truck and equipment rental, truck repairs and maintenance, permits and licenses, fuel, mileage taxes, fees, tolls, insurance, health insurance, returned or damaged products, and other deductions imposed by Goya and memorialized in its records.

79.    As a result of Goya's uniform policies and practices described above, Plaintiffs and the New Jersey Wage Deduction Class were illegally deprived of regular wages earned, in such amounts to be determined at trial, and are entitled to recovery of such total unpaid amounts, pre and post-judgment interest, attorney's fees and costs, and liquidated damages pursuant to N.J.S.A. 34:11-4.1, *et seq.*

**SECOND COUNT**
**Violations of the New Jersey Wage and Hour Law Payment Law**
**Unpaid Overtime**
**(On Behalf of Plaintiffs Minter, Fuller, and Pena, Individually and on Behalf of the New Jersey Overtime Class)**

80.    The foregoing paragraphs are incorporated here as if set forth in their entirety.

81.    Goya is an employer covered by the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a(1)(g) and 12:56-19.1.

82.    Plaintiffs and the New Jersey Overtime Class are "employees" as defined by N.J.S.A. 34:11-56a(1)(h).

83.    The overtime wages sought by this claim are "wages" as defined by N.J.S.A. 34:11-56(a)(1)(d).

84.     Throughout the relevant period, Goya has been subject to the NJWHL and the enabling Regulations noted here.

85.     Plaintiffs and the New Jersey Overtime Class are entitled to overtime compensation at a rate of one and one-half times their regular hourly rate for hours worked in excess of forty (40) hours per week pursuant to N.J.S.A. 12:56-6.1 and 12:56-6.5(b).

86.     Plaintiffs and the New Jersey Overtime Class do not qualify for any exemption from the wage and overtime requirements of the NJWHL.

87.     The exact amount of compensation, including overtime compensation that Goya failed to pay Plaintiffs and the New Jersey Overtime Class Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Goya.

88.     The NJWHL requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiffs and the New Jersey Overtime Class are entitled to review their records to determine the exact amount of overtime wages owed by Goya. Absent Goya keeping these records as required by law, *see* N.J.S.A. 34:11-56(a)(20), Plaintiffs and the New Jersey Overtime Class are entitled to submit their information about the number of hours worked.

89.    Goya acted willfully and intentionally, and as a result of its willful and unlawful conduct, Plaintiffs and the New Jersey Overtime Class are entitled to an award of damages in an amount to be determined at trial, plus attorney's fees and costs, and liquidated damages.

### THIRD COUNT
**Violations of the New Jersey Wage Payment Law**
**Unlawful Deductions**
**(On Behalf of Plaintiff Mejias Individually)**

90.    The foregoing paragraphs are incorporated here as if set forth in their entirety.

91.    Goya's Agreement contains a choice of law provision providing that the "Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey." Accordingly, Plaintiff Mejias's individual claims are properly brought under New Jersey law. *See, e.g.*, *Portillo v. Nat'l Freight, Inc.*, No. 15-cv-7908 (JHR/KMW), 2020 WL 3582514, at *5 (D.N.J. July 1, 2020).

92.    Plaintiff Mejias is an employee entitled to the protections of the NJWHL.

93.    Goya is an employer covered by the NJWHL.

94.    At all times relevant herein, Goya has been responsible for paying wages to Plaintiff Mejias.

95.    The NJWPL requires that employees receive all wages owed. *See* N.J. Stat § 34:11-4.2.

96.     The NJWPL generally prohibits employers such as Goya from making deductions or withholdings from the wages of Plaintiff Mejias except for those deductions or withholdings permitted therein. *See* N.J. Stat. § 34:11-4.4.

97.     Goya violated the NJWPL by withholding wages for illegal deductions from Plaintiff Mejias.

98.     As a result of Defendant's uniform policies and practices described above, Plaintiff Mejias was deprived of regular wages earned, in such amounts to be determined at trial, and is entitled to recovery of such total unpaid amounts, pre and post-judgment interest, attorney's fees and costs, and liquidated damages pursuant to N.J.S.A. 34:11-4.1, *et seq.*

<u>**FOURTH COUNT**</u>
**Violations of the New Jersey Wage and Hour Law Payment Law**
**Unpaid Overtime**
**(On Behalf Plaintiff Mejias Individually)**

99.     The foregoing paragraphs are incorporated here as if set forth in their entirety.

100.    Goya's Agreement contains a choice of law provision, which provides that the "Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey." Accordingly, Plaintiff Mejias's individual claims are properly brought under New Jersey law. *See, e.g.*, *Portillo v. Nat'l Freight, Inc.*, No. 15-cv-7908 (JHR/KMW), 2020 WL 3582514, at *5 (D.N.J. July 1, 2020).

101.   Goya is an employer covered by the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a(1)(g) and 12:56-19.1.

102.   Plaintiff Mejias is an "employee" as defined by N.J.S.A. 34:11-56a(1)(h).

103.   The overtime wages sought by this claim are "wages" as defined by N.J.S.A. 34:11-56(a)(1)(d).

104.   Throughout the relevant period, Goya has been subject to the NJWHL and the enabling Regulations noted here.

105.   Plaintiff Mejias is entitled to overtime compensation at a rate of one and one-half times his regular hourly rate for hours worked in excess of forty (40) hours per week pursuant to N.J.S.A. 12:56-6.1 and 12:56-6.5(b).

106.   Plaintiff Mejias does not qualify for any exemption from the wage and overtime requirements of the NJWHL.

107.   The exact amount of compensation, including overtime compensation that Goya failed to pay Plaintiff Mejias is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant.

108.   The NJWHL requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiff Mejias is entitled to review his records to determine

the exact amount of overtime wages owed by Goya. Absent Goya keeping these records as required by law, *see* N.J.S.A. 34:11-56(a)(20), Plaintiff Mejias is entitled to submit his information about the number of hours worked.

109.   Goya acted willfully and intentionally, and as a result of its willful and unlawful conduct, Plaintiff Mejias is entitled to an award of damages in an amount to be determined at trial, plus attorney's fees and costs, and liquidated damages.

## FIFTH COUNT
### Violations of the South Carolina Payment of Wages Act – Unlawful Deductions
### (In the Alternative, on Behalf of Plaintiff Mejias Individually)

110.   The foregoing paragraphs are incorporated here as if set forth in their entirety.

111.   If, despite the New Jersey choice of law provision in the Agreement, the Court finds that New Jersey law does not apply to Plaintiff Mejias' individual claim, then Plaintiff Mejias pleads in the alternative that Goya's actions violate the South Carolina Payment of Wages Act, S.C. Code. § 41-10-10, *et seq*. ("SCPWA").

112.   The SCPWA provides, in pertinent part, that "[a]n employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions as required by subsection (A) of § 41-10-30." S.C. Code § 41-10-40.

113.   Plaintiff Mejias was an employee of Goya within the meaning of the SCPWA and, as such, was entitled to timely payment of wages due to him.

114.   Goya is an employer within the meaning of the SCPWA.

115.   Goya's policy of deducting, either directly or by separate transaction, amounts from the wages of Plaintiff Mejias for various deductions as alleged above that are properly the obligation of Goya to pay, results in a violation of the SCPWA.

116.   Goya's deductions from the wages due to Plaintiff Mejias are not authorized deductions within the meaning of the SCPWA.

117.   Goya's deductions from the wages due to Plaintiff Mejias were not made in good faith and violated public policy.

118.   Any consent or agreement by Plaintiff Mejias related to the deductions from his wages is unenforceable under the Act. *See* S.C. Code § 41-10-100.

119.   Accordingly, Plaintiff Mejias is entitled to wages, treble damages, litigation costs, counsel fees, and such further relief as may be just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs seek the following relief on behalf of themselves and the Classes:

a)      An Order certifying this action as a class action and authorizing notice to be sent to the Classes, designating Plaintiffs Dennis Minter, Jerry

Fuller, and Jose Pena as the Class Representatives, and the undersigned counsel as Class Counsel;

b)      An Order holding that Goya must compensate, reimburse, and make Plaintiffs and the Classes whole for any and all pay and benefits they would have received had it not been for Goya's illegal actions, including, but not limited to, lost past earnings;

c)      A declaratory judgment that Goya's wage practices alleged herein violates New Jersey law and any other applicable state laws;

d)      An Order for injunctive relief ordering Goya to comply with New Jersey law and any other applicable state laws, and end all of the illegal wage practices alleged herein;

e)      Judgment for damages for all unpaid regular wages to which Plaintiffs and the New Jersey Wage Deduction Classes are lawfully entitled;

f)      Judgment for damages for all unpaid overtime wages to which Plaintiffs and the New Jersey Overtime Class are lawfully entitled;

g)      Liquidated and all other damages and penalties allowed by statute;

h)      An Order directing Goya to pay Plaintiffs and members of the Classes pre- and post-judgment interest, reasonable attorneys' fees, and all costs connected with this action; and

i)      Any and all other equitable or other relief that this Court deems fit.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues.


Dated: December 7, 2020

s/ Alexandra K. Piazza_____
Shanon J. Carson (*pro hac vice*)
Alexandra K. Piazza (NJ 010922013)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
scarson@bm.net
apiazza@bm.net

David Cassidy (NJ 024061996)
Yelena Kofman-Delgado
VLASAC SHMARUK
485B Route 1 South, Suite 120
Iselin, NJ 08830
Tel: (732) 494-3600
dcassidy@vslaws.com
ykofman@vslaws.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been electronically filed with the Court and is available for download and viewing using the Court's Electronic Case Filing System on this 7th day of December, 2020.

/s/ Alexandra K. Piazza
Alexandra K. Piazza
